This afternoon, and we'll call that case now, case number 20-50721, Noble Capital Group versus U.S. Capital Partners. Ms. Stefanova, I hope I pronounced that correctly, we'll hear from you first. Thank you very much, and may it please the Court, Marina Stefanova on behalf of plaintiff's appellants, Noble Capital Group, and Noble Capital Fund Management. Appellants respectfully ask that the district court's order compelling this case to arbitration be reversed. And I'll address the three reasons why the district court's decision was error and why this case belongs in court. Very briefly, appellants challenge the specific arbitration clauses in the agreements at issue and show that they were procured by fraud. And as a result, this case, this matter was to be resolved by the court and not the arbitrators. Second, appellant Noble Capital is not a signatory to any of the agreements, and it should not have been bound by them. And third, Appellee's Sweeney, Tal, and Steele are non-signatories and cannot enforce any of the agreements. As to the first issue, appellants challenged the specific arbitration clauses in the agreements because those clauses were procured by fraud. When a party asserts fraud in the inducement of the arbitration clause itself, that is an issue for the courts and not the arbitrators to decide.  The entire agreement, the arbitration agreement, or the delegation clause? So specifically, the issue that matters for the motion to compel arbitration is the arbitration clause. And so the fraud that was alleged as to the arbitration clause is specific and distinct from any other allegations of fraud that may have been raised in the underlying complaint. And as to the issue of the delegation clause, that is one of the errors that we believe the district court committed is that it recognized that appellants had challenged the arbitration clause, but it nevertheless found that it hadn't challenged the specific delegation clause. And that was error for two reasons. The first reason is that the delegation language that's included within the arbitration clause actually does not confer on the arbitrators the authority to decide the validity of the arbitration clauses themselves, or claims that the arbitration clauses themselves were induced fraudulently. Where, counsel, in the record is the challenge to the delegation clause preserved? The challenge to the delegation clause, the delegation language is embedded within the arbitration clause. And so this was an issue, this was the clause that appellees and defendants in the case wanted to enforce. But where is the specific challenge to the delegation clause preserved? So it is in the response to the motion to compel. Appellants responded and said that the arbitration clauses were procured by fraud. And those arbitration clauses included the delegation language. But doesn't the Renta Center case specifically state that there has to be a challenge to the delegation clause itself as embedded in the arbitration clause? So this case aligns with Renta Center. So the distinction here is that in Renta Center, the delegation clause specifically allowed the arbitrator or conferred upon the arbitrator the authority to decide all disputes on enforceability of the agreement. There was no distinction between challenges to the arbitration as a whole and challenges to the arbitration clause. It was just the arbitrator is allowed to decide any issues regarding the enforcement of the agreement. However, the clauses we have here are very different from the clauses in Renta Center because here the language of the arbitration clauses themselves distinguishes. So the arbitrator is allowed to decide issues regarding the validity of the agreement. However, that is not an issue here because we're not responding to the motion or objecting to the motion to compel based on fraud as to the whole agreement. The specific clauses here are different because the language then goes on to say or the validity or scope of the arbitration agreements. And so that is distinguishable because the clause itself draws a distinction between the agreement as a whole and the arbitration clauses. And here there is no language that says that enforceability of the arbitration clauses themselves is an issue for the arbitrator. And again, the standard here— How is the scope or applicability, how does that not encompass what we're talking about today in terms of the validity of the arbitration clause but also the delegation clause? Yes, Your Honor. So the, because the earlier part of the clause used the terms enforceability as to the, or the validity of the, validity or performance of the agreement and then the language of the clause that applies to the arbitration clauses specifically is only scope or applicability. So that is distinguishable because there is no reference to validity. Scope would be whether a claim falls within the arbitration clause. Why does that matter? Because the arbitration, this is not a separate arbitration agreement, right? It's a paragraph or section 16 of the entire agreement. That's right. Yes, Your Honor, that's right. So as long as we're covering and sending to arbitration any dispute arising out of or relating to this agreement of which the arbitration is one part, and that includes expressly any claims of fraud or fraud in the inducement, why is that not enough? Because the parties, the arbitration is a matter of contract, and in order to refer a matter to the arbitrators and to allow them to decide it, there has to be clear and unmistakable evidence of the intent to do so. What's unclear about any dispute, including claims of fraud or fraud in the inducement? Because claims of fraud or fraud in the inducement goes to the actual claims, so whether, like a breach of contract claim or a claim of fraud or fraud in the inducement. So for example, whether there's a claim that the agreement was, there was fraud related to the agreement, that is what this refers to. However, there is a distinction here because the arbitrators do have the authority to decide any claims of fraud or fraud in the inducement, but that language does not pertain to fraud or fraud in the inducement as to the arbitration clause specifically, and that is why it's distinguishable. But it covers the whole agreement. Um, it, it, uh, yes, the arbitrators are— I take your point to be it's only about fraud in the inducement of the agreement in toto, not paragraph 16 of the agreement. Yes, exactly. So the, the claims of fraud that the arbitrators can decide are just, uh, substantive claims of fraud and fraud in the inducement. But when a party challenges the essence and the enforceability and the— What if you have a dispute about paragraph—randomly, I'll just pick 10, I have no idea what 10 is. Uh, is a dispute about paragraph 10 of the agreement a dispute about the agreement? Um, that, I, I believe that would be a dispute about the agreement, yes. Well then why, why would 16 be any different? Um, because this is specifically about the making of an arbitration clause. And when that goes to whether, uh, under Prima Paint and under Rent-A-Center, when the challenge is to the arbitration clause itself, a much higher standard is imposed. Um, as the Rent-A-Center case acknowledged, the, the standard is higher because here we're actually, um, taking the party's right to litigate the matter and handing it over to another, um, forum. And, um, this is particularly important here because, um, one of the arguments that, um, at least have made is that, um, other, other conduct supports, um, arbitrating this matter. And although this is not relevant to this specific issue and the case should be decided just on the claims and actions in this case, looking at that other conduct compels, um, keeping this case in, in the courts even more. Um, and that is because the applies have affirmatively, um, abandoned prior arbitration. So the, the parties have had a long history of disputes and, um, uh, as part of that, when there was an actual contractual dispute, um, NCFM, which is a signatory, understood that it had to file this in arbitration and it hadn't uncovered the fraud at that time that was specific to the arbitration clause. Um, and so it filed in, in jams. Um, and then in the fall of last year, um, the fund, which is a limited partnership and is controlled by the general partner, U.S. Capitol, caused that arbitration to terminate. Um, and, and then tried to actually continue proceeding in, um, in court. Um, and so one of the reasons why the district court in this case found that equitable and arbitration was because it believed that this should all be a consolidated matter in arbitration. There is no longer this arbitration proceeding. It has been terminated. Um, in fact, because it was terminated, um, NCFM saw its claims, um, basically foreclosed. And so it filed a new lawsuit in the Western District of Texas and U.S. Capitol again compelled to arbitration. And that motion was recently denied and it was recently appealed to this court. But, but the key here is that, um, the reason why it was denied, why the motion to compel in that case was denied was because, um, was because, uh, U.S. Capitol had already had its arbitration and had terminated it. And so it would be highly incongruous for contract-based claims that actually invoke the agreement and that are actually between signatories to not proceed in arbitration and to be kept in the courts while this case, which involves non-signatories on both sides of the dispute and which involves allegations and evidence as demonstrated by the verified complaint of the fact that there has been specific, um, fraudulent inducement of the arbitration clauses, um, that this case would then be, uh, referred to arbitration. Counsel, so you invited us to a textual argument or a textual analysis of the, the scope of the delegation clause, I guess you'd say. So applying that to the non-signatory issue, what are we to do with the word affiliate that's in the agreement and doesn't that cover the noble entity that's a non-signatory? So the word affiliate is not defined and that's something that appellees have not, um, have not disputed. Um, the court did not find a definition. It is just a generic, uh, reference to affiliates. And under GNV v. Alguirre, uh, simply referencing an affiliate is not sufficient or simply having a corporate relationship with another entity is not sufficient. Um, this, in order to be bound as a non-signatory, it was U.S. capital's burden to show why it fell within this definition of affiliate. And there's simply no definition of affiliate, much less one that would show that noble capital, um, should specifically. But, but that would include a parent company, wouldn't it? Um, it would, but, but this, but, um, simply including a reference to other, um, other generic ways to describe entities would, um, upend the concept of proceeding to arbitration only when a party has agreed to do so. Um, so in these particular cases, uh, in the specific, um, agreements that, uh, U.S. capital tried to invoke the word affiliate, um, there were some references to, um, other, um, other specific entities. And so when the parties wanted another entity to be bound by the agreements, they knew how to do that. But the— And counsel, why is the language in there? Excuse me? Why is the language in there? Why is the word affiliate used? Um, I, I can't speculate as to why it was used, but, but the standard here is that U.S. capital was to prove that, um, noble capital actually falls within, within the understanding of what affiliate would have been. And so under this reading, any, any, any entity that, um, NCFM is affiliated with would have unknowingly be subject now to arbitration under these three agreements. Well, counsel, refresh my memory, who drafted the agreement? Um, I believe it was, uh, noble capital that drafted the agreement. Was— I, I, I believe it was, uh, noble capital, or NCFM that drafted the agreements. So, so noble drafted these agreements? That is my understanding, yes. Did we not construe this against them then? Um, there is this, this concept, yes, but when it comes to arbitration, um, this is about binding a party to, uh, basically forego its right to proceed in court based on a simple reference to affiliate. Uh, it, it, yes, and I get counsel's point, or I take your point that arbitration agreements are between those who agreed to arbitrate. But here you've also got a situation where both of these noble entities, the signatory and the non-signatory, are plaintiffs in this litigation. They also are pleading or alleging claims jointly. I mean, in other words, there's no real distinction made in nobles, the nobles, entity, the noble entities, let's try to be plural, in terms of who's alleging what. In other words, they're proceeding in tandem, so would that not go into our interpretation of this contract, as to turn, as to what affiliate includes? An additional consideration here is that they are not suing on the agreement, so they're not invoking any of the agreements, and that goes to the third issue, which is . . . How are they not suing on the agreement? I mean, I get fraud and fraud in the inducement and all that, but isn't the, isn't the agreement still the basis of those claims? No, Your Honor. Um, this is about fraud that preceded the agreements, that was about the, the party's relationship. This is about the fraud of individuals who made representations about their capabilities. This is not a case where any of the obligations are invoked or enforced. There are claims like that between, between signatories to the agreements, and those were the ones that were arbitrated and where the arbitration was terminated. This is distinct. This involves string-along fraud, which is an extra-contractual claim, and fraud in the inducement. So these are not, um, claims that are, that invoke the agreement, or that depend on it in any way. This is about representations made between individuals and entities in order to induce Noble Capital and NCFM to engage in certain conduct, and Noble Capital is, uh, not a signatory to these agreements, and it's, and even though it raises the same claims here, um . . . You've saved time for rebuttal. I'll just note quickly, at least the version of the agreement that I have, it appears to be on U.S. Capital Partners letterhead. I'm not sure that matters, but . . . Yes, thank you, Your Honor. Thank you. Uh, you've saved five minutes. Thank you. Thank you. Uh, Mr. Woodall. We'll hear from you. Good afternoon, Your Honors. May it please the Court.  I'm a member of the U.S. Supreme Court, and I'm here to speak on this appeal. Um, before I address the issues that I was going to address, I, I would like, I think it would help the Court, uh, if I made some references to the record, and it actually kind of follows up on some of the questions Your Honors had. Um, you know, one question or one issue here is if on the signatory issue, the affiliate issue, Noble, uh, Capital Group is arguing that it's not a part of these contracts, yet it is suing for fraudulent inducement of a contract. Um, and that's, uh, in Plaintiff's first amended complaint, um, on the record site there, 179. Also . . . Is your point that this theory is enclosed by the complaint, essentially? Well, yes, Your Honor. I mean, how can you, if you're not a party to a contract, how can you claim that you're on 170? So, going on, more on the signatory issues or the enforceability, um, of the individual defendants to enforce this, um, one of the ways that, that can happen is where the individual defendants, which are all corporate officers, managing partners, CEOs, senior vice presidents of these entities that are doing business together, is if they benefit personally, or if they benefit, they make money, compensation, et cetera. Um, then this is from, again, the plaintiff's or the appellant's own petition. They claim on 170 of the record, Tao, Steele, and Sweeney seeking to induce Noble to place money, on page 168 of the record, from which they could extract excessive fees. On 173 of the record, Sweeney, Tao, and Steele pay themselves a fee. On 176, again, it mentions extract fees. So, I want to point that out to the court because, again, that's one of the bases for a non-signatory if you're an executive. And, you know, to the appellant's argument that these guys were somehow operating individually instead of on behalf of the very companies that then entered into these contracts is not very, um, well, it's just not supported by the record. Um, as to their argument about, um, whether they attacked specifically the delegation clause, uh, Your Honors, they didn't. And on page 179 of the record, they admit Noble would not have agreed to do business with U.S. Capital nor would they have entered into the confidential arbitration provisions. So, that's an attack on the entire relationship. And that's been consistent throughout until, you know, the original complaint they filed, there was no allegations of fraud or fraud in the inducement. We filed a motion to compel arbitration, they amended their complaint, and for the first time now, fraud in the inducement shows up. However, when you look at their first minute complaint, their sole focus was on confidentiality. Because according to them, there's this big scheme that, um, U.S. Capital wanted to keep all of this litigation that they supposedly had going on confidential in a way and out of the public eye. So, throughout their complaint, it's all about confidentiality. It's nothing to do with delegation clause or anything. And so, um, also, the theory of there being confidential arbitrations is not supported by record. In fact, the only thing in the record, your honors, is that, um, the first arbitration that U.S. Capital was involved in was in April of 2017. And according to Noble, the misrepresentations that they allege occurred before any contract was signed. And the first contract was signed in August 8th of 2016. So, any misrepresentations, even if there had been any, which we dispute, would have occurred long before there ever even was a confidential arbitration. And that's in the record of, uh, about the arbitration is, um, Taos, Charles Taos Supplemental Affidavit. That's in 409. So, everything they're basing their entire case on, it turns out it's not even true. Um, and so, that goes, just goes to really the history, too, that they never attacked the delegation clauses. In fact, they really attacked the entire contract, the whole relationship. So, with that, um, your honors, you know, we, of course, are asking this court to affirm the district court's decision that appellant's fraudulent inducement claim should be determined by an arbitrator as per the delegation clauses that are in the contracts that were signed by Noble Capital Fund Management, and then also binds the parent company, um, because they're an affiliated, co-managed, and the parent . . . Counsel, to that point, what, what do you say in response to counsel opposite who says affiliate, that's not what affiliate meant? I mean, how, how is it that the parent company is bound to arbitrate when they didn't agree, they didn't, they didn't sign the agreement, they didn't execute it? I, I, I think probably the best response would go back to, well, how are they then suing that they were fraudulently induced into a contract if they're not a part of that contract? So, your argument is less based on the text and the meaning of the word affiliate and more on the conduct of the parties in terms of the two noble entities bringing the suit? Well, I wouldn't say it's, I'm not relying on that to the exclusion of, or let's say that that's more important. I mean, the language . . . Is the word affiliate enough? It is. Well, not only is it affiliated, but don't, also, in the record, as the magistrate judge pointed out, arbitration was initiated by a noble before any of this happened, using these very same arbitration clauses. Well, by, by the non-signatory noble? Uh, no, Your Honor, that's, that's right. It was by a noble capital . . . That's right. Yeah, no, you're right, you're right. So, the question, I guess, is, um, is, is your argument that affiliate is enough, just having that word there binds the parent and any other related entities? Or is it the, the conduct of the parties in filing the suit, or is it both? And tell me the authority you've got for which theory works. Yeah, Your Honor, I, I would say it's both, because the plain language of the contract defines company as noble capital fund management, it's affiliates, um, you know, co, I mean, it's, it's, it's slightly different than, I think, different ones, but, yeah, affiliates, affiliates . . . Well, the parent company, I, you know, their, in their amended petition, again, they referenced themselves collectively as noble throughout the entire thing, and they . . . So, put the complaint aside, go with the text of the agreement, and tell me what support record or authority, um, is your best case or your best authority for the idea that the  Well, as far as going to the record, I, I would just rely on what the Magistrate Judge found. I mean, she said it was undisputed, um, let me get to the record. Yeah, but the Magistrate Judge said that, you know, she held it was undisputed that they were affiliated companies. It may be undisputed that they're affiliated companies, but Counsel, I guess what's sticking in my, in my crawled old bed is my litigation experience from those days. You know, agreements to arbitrate are agreements between parties to arbitrate, and if you're a non-party to that agreement, I mean, there, there are plenty of cases where parallel litigation goes on, right? You have, you have non-signatories that litigate claims or non-arbitrable claims in court, and you have arbitrable claims that are going on concurrently, even. It's not necessarily the best litigation approach or more, maybe, efficient, but that happens, right? So, how do we get to the point here where the parent is bound? That, that's the, that's the nub I'm getting at here. Right. Your Honor, I just, I think that it's enough that it's defined affiliates as, you know, the company, and then, and they admit and they're pleading that they're affiliated. Oh, but you say defined affiliates. Where's affiliates defined? Or are we to do that as a matter of law? Well, as a matter of law, Your Honor. Where, where's your authority, though, that, that we can do it that way? If Your Honor would like, I could supplement after the hearing on something. If you'd like. And so, Your Honor, any, anything further on that, Your Honor? Okay. Another thing, Your Honor, is there's an integration clause in all of these, in, in the contracts that were signed, and that just goes to the point counsel was making about somehow these contracts are not related to the fraudulent inducement claims when, in fact, they were negotiated by attorneys and, and there's a, you know, no prior representations or anything like that, that the agreements replace that. So, and going to the delegation clause itself, Your Honors, you know, it says what it says, and it clearly encompasses any claim to fraud, fraudulent inducement, or to go to the arbitrator. Trying to draw a distinction between the agreement as a whole and the first part of the clause is, is just a, well, it's a very strained reading. And, Your Honor, the, you know, the law as it is in the Fifth Circuit currently on the issue of having to specifically challenge a delegation clause as opposed to either the arbitration clause as a whole or the, or the entire contract, that is what is required now in the Fifth Circuit. It seems from counsel's brief that they were trying to argue that prima paint is the standard and that it, you just simply have to attack an arbitration clause and not go further and attack specifically the delegation provisions, which is not correct, you know, it's not the status of the law now. And that changed with Renner Center and Bowles and Petrofac in those cases as well. In fact, I, in reading Renner Center, I was looking at Justice Black's dissent where he says that prima paint, which, I'm sorry, where he expresses his dislike, the fact that the court is now making people go a step further than what they had to do in prima paint, which is attack specific language within an arbitration clause. And here, you know, so, you know, prima paint is distinguished by that and, you know, prima paint only required to challenge the arbitration rule as a whole. Renner Center said that you have to go and actually challenge the specific delegation clause, which in this case we do have a delegation clause and that wasn't done. So on that basis, the district court was correct in their holding that arbitrability and their fraudulent inducement claim should be determined by the arbitrator. On the signatory issue, Your Honor, of holding or of the ability of the individual defendants to enforce this arbitration agreement, although they are not signatories, again, the individual defendants were corporate officers, they were benefiting through compensation and their reputations, I'm sorry, and at no time there's nothing in the record to even remotely suggest that they were ever operating on their own. Unless Your Honors have any additional questions, I will rest. Thank you. Thank you, Your Honor. We have your argument. Ms. Stefanova, you've reserved five minutes. Thank you. I'd like to address all the points made as to the first issue, the fraudulent inducement of the arbitration clauses. First of all, we heard argument on whether factual issues about, in the record, whether the inducement, how it was alleged and when it occurred, all of these are factual questions and we're not there yet. We are still at the gateway threshold issue as to who should decide this. And so this appeal is based on the fact that it was for the court to decide this and it did not conclude that there was no fraudulent inducement. It simply concluded that it was for the arbitrators to decide that issue. As to the point that there are allegations that the entire relationship is fraudulent or that there were improprieties in other conduct not specifically related to the arbitration clause, that is irrelevant. So, for example, under Rent-A-Center and under PrimaPaint, the fact that there are other allegations and other statements of fraud does not mean that there are not specific and distinct allegations of fraud as to the arbitration clause. And the reason why other allegations don't matter is because the whole reason why the And so because there are distinct misrepresentations made about the clause itself, that is what controls here. As to the delegation issue, the delegation clause issue, the Edgemean case discusses Rent-A-Center and distinguishes it and shows why there is a distinction when it comes to whether parties have agreed that just claims should be decided by the arbitrator as opposed to attacks on the clause itself. And this case is very much unlike the Kubala case and other cases cited by the district court in support of the fact that the delegation clause should be challenged. The delegation clause should be challenged when that is the specific provision that one of the parties contends allows the case to proceed to arbitration. But we don't have that here. And in any event, whatever language would have conferred the arbitrator any authority is embedded within the arbitration clause and that entire clause was challenged. As to, there was an earlier question about the distinction between enforceability and scope. The district court itself saw this as an enforceability issue, so as a gateway first issue of the Supreme Court. The Supreme Court did not see this as a scope issue, and that's in the record on 480. There was also a reference to an integration clause. I don't believe that was argued in the appeal earlier, and so that is not an issue that is controlling here. But regardless, under California law, the inclusion of an integration clause is not sufficient to in any way show that this matter, that appellants agreed to arbitrate this. As to the affiliate issue, the fact that plaintiffs in the underlying case used a shorthand for noble is, first of all, that goes to whether they will be able to prevail on their claims, which one of them will be able to prevail on their claims, and all of these factual questions that would be decided in the course of litigation of this matter. But that doesn't go to whether, when the agreement was formed, noble capital ever agreed to be bound by it. And so simply the fact that a shorthand was used in order to refer to both parties in to bind noble capital to the agreements. As to whether the appellees received any benefit, that goes to the third-party beneficiary theory, and it has very exacting standards. So it's not simply enough to benefit from an agreement. The third-party beneficiary must have been intended to be a beneficiary of these agreements, and they're not referenced anywhere in the agreements. And in addition, under California law, they should have been intended beneficiaries of the arbitration clause itself, not even of the whole agreement. And there has been no evidence provided or even any argument or authority demonstrating that they were intended third-party beneficiaries. Thank you. Thank you. The case is submitted and the court is adjourned.